1    **WO**

2

3

4

5

6    IN THE UNITED STATES DISTRICT COURT

7    FOR THE DISTRICT OF ARIZONA

8

9    Vladik Uchikura, et al.,                    No. CV-23-01399-PHX-DJH

10                    Plaintiffs,                 **ORDER**

11    v.

12    Clark County Properties LP, et al.,

13                    Defendants.

14

15        On August 1, 2025, Defendant Copper Point Apartments, LLC ("Defendant" or

16    "CPA") filed a Motion to Dismiss All Claims asserted against it in Plaintiff's Third

17    Amended Complaint (Doc. 68), challenging the sufficiency of the Third Amended

18    Complaint ("TAC") under Rule 12(b)(1) and 12(b)(6).  Plaintiffs Vladik Uchikura

19    ("Uchikura") and Cindy Mateer ("Mateer") (collectively, "Plaintiffs") filed a Response in

20    Opposition.  (Doc. 72).[1]  Thereafter, Defendant filed a Reply.  (Doc. 73).

21    **I.    Background**

22        Plaintiffs initially filed their Complaint on July 17, 2023.  (*See generally* Doc. 1).

23    In the following years, Plaintiffs have amended their Complaint three times, leading to the

24    operative TAC.  (Doc. 58-3).  Despite their amendments, the factual allegations

25    ───────────────

26    [1] Plaintiff's Response to Defendant's Motion was not timely filed.  The Court is mindful
     of Plaintiffs' *pro se* status and, because of this, considered Plaintiffs' Response in reaching
27    its decision.  However, Plaintiffs are forewarned that deadlines in this case are taken
     seriously.  *Healy v. Pena*, 131 F.3d 146 (9th Cir. 1997) ("[P]ro se litigants must follow the
28    same rules of procedure that govern other litigants.").  Further late filings will not be
     accepted.  If an extension of time is needed, a motion requesting one must be filed with the
     Court prior to the deadline.

underpinning each Complaint have not materially changed.  Most recently, Plaintiffs sought and were granted leave to file their TAC in order to add CPA as a party to this case. (*See* Docs. 42, 57).  The originally-named Defendants Clark County Properties ("Clark County"), Morrison Ekre & Bart Management Services, Inc. ("MEB"), and Vickie Koernig ("Koernig") are alleged to have either owned, managed, or worked at the subject property during Plaintiffs' residency from 2019 to 2021.  (*See id.* at 1–2).  CPA has been added to the case at this late juncture because Plaintiffs allege that it purchased the subject property from Defendant Clark County Properties on December 18, 2024.  (*See* Doc. 58-3 at 1). Though CPA purchased the property more than three years after Plaintiffs' tenancy ended, the TAC uses the term "Defendants" to refer collectively to Defendants Clark County, Continental Apartments, GP,[2] and CPA.  (*Id.* at 1).  With these points in mind, the Court turns to the TAC's factual allegations.

Plaintiffs' case is premised, generally, on issues that occurred during Uchikura's and later Mateer's tenancy at a property called CopperPoint Apartments.  (*See generally* Doc. 58-3).  Plaintiffs assert that Uchikura entered into leases for the property in October 2019, October 2020, and July 2021, the last of which was also signed by Mateer.  (*Id.* at 26, 48).  Each lease was signed by either one or both Plaintiffs as well as Koernig, who was a "representative" of either Clark County or MEB, though the TAC is not clear.  (*Id.* at 8, 48).

Plaintiffs allege that, throughout their tenancy, "Defendants" discriminated against Uchikura based on his disability and failed to take reasonable steps to accommodate Uchikura, impeding the use of his wheelchair around the property."  (*Id.* at 4–7, 12, 40). Specifically, "the leasing office, laundry room, and ground floor apartment unit(s)" were allegedly inaccessible to "people with physical disabilities utilizing wheelchairs.  (*Id.* at 40).  Plaintiffs allege Koernig "did not offer any accommodation" to assist Uchikura in entering the leasing office, "deliberately [excluded] Mr. Uchikura (and others with disabilities) from community events," and made "multiple attempts to evict…Plaintiffs."

---

[2] Continental Apartments was dismissed as a Defendant on June 4, 2025.  (*See* Doc. 55).

- 2 -

(*Id.* at 5, 12, 20).

Additionally, Plaintiffs allege various problems with other tenants, including improper notice of power washing windows, nearly being struck by a tenant's car in the parking lot, and excessive noise from their upstairs tenants. (*Id.* at 21–22, 24, 26). They assert that Koernig failed to respond to complaints and was "ineffectual" and "flagrantly indifferent." (*Id.* at 49). Further allegations state, in brief, that "Defendants" did not provide notice of maintenance and generally engaged in harassing behavior. (*See*, *e.g.*, *id.* at 17–18, 24–28, 36–38). Plaintiffs allege that Defendants' conduct has caused Uchikura severe anxiety and emotional distress. (*See*, *e.g.*, *id.* at 8–10, 17, 20, 53). Plaintiffs' tenancy ultimately ended on September 20, 2021, when they were constructively evicted due to the discovery of black mold in their apartment. (*Id.* at 29, 37–38). This alleged conduct led Plaintiffs to file their initial Complaint in 2023. (Doc. 1).

As previously stated, Plaintiffs allege Defendants "Clark County Properties, LP., and Continental Apartments, GP., [] sold their respective shares of interest of ownership to the newly added Defendant(s); Copper Point Apartments, LLC., back on December 18th, 2024." (Doc. 58-3 at 1). CPA is thus being sued on purely successor liability grounds.

The exact claims Plaintiffs bring against Defendants are not clear. However, based on the foregoing allegations, and construed in the light most favorable to Plaintiffs, Plaintiffs have brought claims under the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA") against all Defendants. (*Id.* at 39–47). Plaintiffs also purport to bring state law claims against all Defendants "[u]nder all relevant Arizona laws such as Arizonans with Disabilities Act (AzDA), Arizona Fair Housing Act (AFHA), Arizona Contract Law, Arizona Material Affect on Health and Safety of Occupants, and under Article 8 (Public Accommodations and Services) of Arizona's Civil Rights Laws[.]" (*Id.* at 50). Plaintiffs maintain that all Defendants are jointly and severally liable for all of their claims. (*Id.* at 50–51).

## II.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim.

*Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III.  Discussion**

In December of 2024, Defendant purchased the subject property. (Doc. 68 at 2). Following this development, Plaintiffs added Defendant as a party. Defendant now raises several arguments in support of dismissing Plaintiffs' claims against it. Primarily, Defendant argues that Plaintiff has failed to allege circumstances that establish successor liability against Defendant. (Doc. 68 at 6–7).

1    Under Arizona law, "the general rule for successor liability is when a corporation

2    sells or transfers its principal assets to a successor corporation, the successor corporation

3    is not liable for the former corporation's debts and liabilities." *Warne Investments, Ltd. v.*

4    *Higgins*, 195 P.3d 645, 650 (Ariz. Ct. App. 2008).  A successor corporation is only liable

5    if one of the following circumstances is present: (1) the successor corporation expressly or

6    impliedly agreed to assume the liabilities of the predecessor corporation; (2) the alleged

7    transactions between the two companies amounted to a consolidation or merger of the

8    corporations; (3) the successor corporation is a mere continuation or reincarnation of the

9    predecessor corporation; or (4) clear and convincing evidence shows that the transfer of

10   assets from the predecessor corporation to the successor corporation was for the fraudulent

11   purpose of escaping debt liability.  *Id.*

12       The court in *Stewart v. Bank of New York Mellon*, for example, found a claim for

13   successor liability against a bank was insufficiently pled where a plaintiff merely asserted

14   that the successor bank exercised a "substantially similar degree of ownership and control"

15   over the property as its predecessor did.  2011 WL 3267321, *3 (D. Ariz. 2011).  The court

16   concluded that

17       [t]his allegation, by itself, is insufficient to state a claim for successor liability
         as to [the successor bank].  It completely fails to plead the existence of any
18       fact or facts sufficient to make plausible a relation between [the successor]
19       and [its predecessor] that would give rise to successor liability, or any other
         basis upon which [the successor bank] would become liable for the actions
20       of [the predecessor bank].

21   *Id.*  The court also noted that its conclusion was strengthened because the successor bank

22   "apparently did not claim any role with respect to this matter until 2009—three years after

23   the refinance [of the subject property] occurred."  *Id.*

24       Here, as in *Stewart*, Plaintiff fails to allege any of the scenarios that may plausibly

25   establish successor liability.  Indeed, the TAC states only that Defendant purchased

26   CopperPoint Apartments on December 18, 2024, over three years after Plaintiffs' tenancy

27   ended.  (Doc. 58-3 at 1) (internal citation omitted).  There is no other allegation in the TAC

28   that specifically identifies CPA, let alone allegations that plausibly state one of the above

circumstances justifies its liability as a successor.

In their Response, Plaintiffs argue that "under established legal principles, liability may be extended to a successor entity through doctrines of third-party liability and inheritance of liability in the context of a business buyout or acquisition." (Doc. 72 at 4). And they state that "Defendants' argument for dismissal fails to address the reality that liability can persist and attach to the successor entity where appropriate, and thus the claims against the named Defendants should not be dismissed on the basis of a mere change in name or ownership." (*Id.*)  Plaintiffs say the purchase agreement between Defendant and its successors may outline "what liabilities the successor company declines to purchase from the target company." (*Id*. at 5).  Plaintiffs cite sample contract language from such "common situations" and say "[u]nless there in definitive evidence showcasing such information, then the newly added Defendant shall be collectively liable, responsible, and accountable." (*Id*. at 5–6).

"At the motion to dismiss stage, the Court must determine whether Plaintiffs' allegations give rise to plausible claims of liability against Defendant." *Morgan v. Systems and Software Enterprises LLC*, 2015 WL 13283061, *4 (C.D. Cal. 2015).  Put differently, the complaint must allege sufficient factual allegations to give rise to any theory of liability the plaintiff intends to pursue.  It is Plaintiffs' burden to plead sufficient facts to support their theory of liability.  Critically, Plaintiffs do not point to any allegations in the TAC that establish successor liability.  Plaintiffs do not allege in the TAC that CPA is related to or affiliated in any way at all with the prior owners of the property, nor do they even allege that CPA is a mere continuation of the prior owners.  (*See generally* Doc. 58-3).  Plaintiffs also do not allege that they ever interacted with CPA, executed a lease with CPA, or have returned to the property since CPA's December 2024 purchase.  (*See generally id.*).  The TAC, in fact, lacks any allegations of CPA's specific conduct.  (*See generally id.*).  At bottom, Plaintiffs assert claims against CPA solely based on events that happened years before CPA's ownership and in which CPA was in no way involved.

The TAC is clear that both Plaintiffs' tenancy at the subject property ended in 2021.

- 6 -

(Doc. 53-3 at 38).  Defendant purchased the property in 2024.  (*See id.* 58-3 at 1).  Without successor liability, Plaintiffs have not established a basis for holding Defendant accountable for events that transpired years before its purchase of the property.  Moreover, the TAC is devoid of allegations establishing an ADA, FHA, or other statutory claim against CPA, and Plaintiffs have not otherwise provided any provision of state or federal law that allows Plaintiffs' statutory claims to be brought against Defendant.[3]

Accordingly,

**IT IS ORDERED** that Defendant Copper Point Apartments LLC's Motion to Dismiss All Claims Asserted Against It (Doc. 68) is **GRANTED**.  Defendant Copper Point Apartments LLC shall be dismissed as a party to this case.

Dated this 2nd day of February, 2026.

Honorable Diane J. Humetewa
United States District Judge

---

[3] Defendant's request an award of attorney fees under A.R.S. § 12-341.01.  (Doc. 68 at 16).  That provision allows a Court to award attorney fees to the successful party in any dispute "arising out of" a contract dispute. A.R.S. § 12–341.01.  Such an award is discretionary, and, given Plaintiffs' pro se status and the brief time Defendant spent as a party to this case, the Court will not award attorney fees and costs.